### .ALEXANDER GORDON v. ADELIN DREUX and another.

Defendants sued as maker and endorser of a note, severed in their defence. There was a judgment in favor of the plaintiff against the maker, but against him as to the endorser; and he appealed from the latter alone. On a motion to dismiss the appeal, on the ground that the maker of the note was not made a party to the appeal: *Held*, that defendants having severed in their defence, and their interests being distinct, it was unnecessary to cite a party who had no interest in the matter in controversy between his co-defendant and the plaintiff.

It is no ground for dismissing an appeal from a final judgment, that the record does

*Gordon v. Dreux and another.*

not contain testimony, not reduced to writing, taken in support of an exception of the other party, the judgment sustaining which was acquiesced in by the appellant, and had its effect.

The first section of the act of 13 March, 1827, authorizing notaries, or others acting as such, by a certificate added to the protest of a note, or bill, &c., to state the manner in which notices of protest were served or forwarded, and declaring that a certified copy of such certificate shall be evidence of all the matters therein stated, applies to acts done by the notary in his official capacity, and, therefore, within the territorial limits of his authority as such. But where an act was done by him, such as serving a notice of protest, in a parish in which he had no capacity to act, the same degree of faith and credit is not given to his written and unsworn statement. In such a case he should be sworn and examined as an ordinary witness, as he must be considered to have acted unofficially, and not under his oath of office.

In an action against the maker and endorser of a note, the defendants excepted to the action as premature, on the ground that the amount claimed by plaintiff was not yet demandable; as the latter, after the maturing of the note sued on, by a special agreement with the drawer, for a consideration received from him, had granted him a certain time within which to pay the note, which delay had not yet expired. The exception was sustained. After the expiration of the delay, the plaintiff obtained a judgment by default, which was set aside, the defendants filing separate answers, and the endorser urging that he had been discharged by the delay. There was a judgment against the maker, but in favor of the endorser. On appeal: *Held*, that though the fact of granting the delay was shown, the exception having been pleaded by both defendants, proved that the endorser knew that the delay had been granted, and consented to it, and that, having enjoyed the benefit of the plaintiff's indulgence, he is not discharged.

APPEAL from the District Court of the First District, *Buchanan*, J.

*Bodin*, for the appellant. In this case the question arises, whether a Notary can give an official attestation of a fact occurring out of the place of his jurisdiction, when it is his own act to which he certifies?

The presumption that the notary served the notice himself, since he certifies it under his oath, is not destroyed. The question is simply as to the sufficiency of the proof, not as to the existence of the fact, which stands uncontradicted. Can he give an official certificate of the fact, so as to supersede the necessity of his appearance in Court as a general witness? Is his certificate a sufficient proof of itself?

If a protest, and a certificate of protest, were authentic acts, the question would perhaps be answered in the negative; because

the rule seems to be, that an authentic act is proof, *per, se*, of all agreements and facts accomplished *tempore instrumenti gesti.*

But a certificate of notice of protest, under our statute of 1827, is not an authentic act.  10 La. 209.  It is a notarial attestation, to which the act gives full credit, merely on account of the faith and confidence due to an official oath, the witnesses being required only to attest the entry on the records of the Notary.  See 16 La. 564.

Notaries cannot, surely, be called upon to give such official attestations out of the parish for which they have been commissioned; because, out of its limits, their capacity ceases.  "*Il leur est defendu d' instrumenter, c'est à dire de recevoir des actes hors de leur ressort.*"  Toullier, Vol. 8, No 72.

But which is the instrument which requires their competency ? It is clearly the protest itself.  If the demand of payment is to be made in the parish of Orleans, a Notary Public of that parish must be used.  The residence of the maker or acceptor settles the jurisdiction, no matter where the notices of protest are to be served.  The notices to endorsers, and the certificate of service of those notices, are but an accessary to the principal act or main instrument.  Who is to perform the accessary ?  The Notary who made the demand and protest.  And his certificate of " the manner in which any notices of protests to drawers, endorsers, or other persons interested, were served or forwarded, will be evidence of the matters therein stated."  Act. of 1827, § 1.

Nothing but the fact of incompetency can invalidate the certificate of a Notary.  That competency, in the case of the protest of a bill or note, depends upon the residence of the drawers, that is, on the place where the demand and protest are to be made. The moment that he is seized with jurisdiction over the principal matter, his capacity is vested to complete any other accessary act, and his certificate must be held to be valid, if it attests no act but his own.

Another construction of the statute of 1827, would render it, in many instances, inapplicable to our distant parishes.  Suppose a protest is to be made by a Notary, or Parish Judge, of a distant and yet thinly populated county, where no post office is yet established.  After protesting the bill, notices äre prepared to be forwarded to an endorser living in the city.  What will the Notary

do? Shall he cross the line of his parish to deposite in the adjoining post office, the letter or notice directed to the endorser? If there is no post office within his own parish, the notice must not be sent at all; or rather, if sent by him, there shall never be any official attestation of it, because the line of jurisdiction has been crossed, in order to forward the notice; and the Notary cannot testify out of his certificate, a fact performed by him out of his jurisdiction.

Such cannot have been the legislative intent. It might be true, even in relation to authentic acts, which prove, *contra omnes*, only such agreements and facts as are the objects of the contracting parties, that in some cases they are evidence of matters accomplished, out of the notarial jurisdiction of the officer. For instance, the statute requiring Notaries to give written notice to the members of family meetings, to attend at their office on the day appointed by the order of court. Some of those members may be residents of a neighboring parish within a radius of thirty miles. Yet the fact of the letter having been carried by the Notary himself may be attested. He can send it by private conveyance, and certify it to have been sent in that manner. But if he does it himself, why should not his certificate be as good?

In the same way, the Notary who has protested a bill, is bound to give or send notice to the endorsers. The statute of 1827 has not changed the mercantile law. The notice may be sent by private conveyance, or by mail. If he puts the notice in the post office, the Notary's certificate is good, because it certifies his own act. If the notice is sent by private conveyance, the certificate of the Notary is not good, because it contains the attestation of an act done by another than himself; but if he carries the notice himself, or crosses the parish line to put the notice into the letter box, these being his own acts, his certificate should have full faith and credit, because his competency has at once been vested as to any act or fact in relation to the protest, by the place of the demand, or residence of the maker.

*Bartlett*, contra. The appeal should be dismissed: *first*, for the want of necessary parties; *secondly*, because the record does not contain all the evidence introduced below. *Dorsey* v. *Harding et al.* 1 Robinson, 32. *Bell* v. *Morrison*, 1 Ib. 543.

*The State* v. *Cook*, 16 La. 287.   *Johnson* v.  *Spearing*, 15 Ib. 252.   Ib. 435.   19 La. 91.

SIMON, J.   This is a suit against the drawer and endorser of a promissory note.   The defendants filed an exception, stating that the action was prematurely instituted, and the claim set up against them not yet demandable, inasmuch as the plaintiff, after the maturity of the note sued on, by special agreement with the drawer, for certain considerations received from said drawer, gave him time to pay the note, to wit, a delay of sixty days, which has not yet expired, and until the expiration of which, the plaintiff agreed not to proceed to enforce the payment of the note.   The defendants prayed for a dismissal of the action.

After hearing the testimony adduced by the defendants, this exception was sustained by the court, *a qua*, which ordered, that the suits should be continued for sixty days from the day of the protest of the note sued on.   This judgment was acquiesced in by the plaintiff, who took no appeal therefrom.   After the expiration of the delay, the latter moved the court for a judgment by default against the defendants.

The defendants severed in their answers to the merits.   The drawer of the note pleaded want of consideration ; and the endorser, after pleading want of notice, averred that if he ever was indebted to the plaintiff as endorser, his liability has been released in consequence of the plaintiff having given time to the drawer of the note, without his, the endorser's, consent or knowledge.

On these issues judgment was rendered below in favor of the plaintiff against the drawer of the note, and against him in favor of the endorser, from which the plaintiff has appealed.

A motion has been made to dismiss this appeal on two grounds :

*First.* That all the necessary parties are not before the court, as one of the defendants, the drawer of the note, has not been made a party to the appeal.   *Second.* That the record does not contain the evidence on which the case was tried.

I. This suit was brought against the defendants, *in solido*, and judgment was obtained by the plaintiff against one of them.   The plaintiff appealed from the judgment rendered against him in favor of the defendant, who was released from the obligation declared upon in the petition ; and we are unable to see any good

reason why he should have appealed from a judgment rendered in his favor. The defendants had severed in their defences before the inferior court; their interests were distinct and separate; and it seems to us, that there was no necessity to bring before us a party who had no interest in the matter in controversy between his co-defendant and the plaintiff. The judgment appealed from, and complained of, does not concern, in any manner, the drawer of the note.

II. The evidence upon which the mérits of this case were tried, is all contained in the record. It is true that the testimony of several witnesses who were examined in support of the defendants' exception, was not taken down in writing, and is not copied in the record; but the judgment rendered thereon has had its effect, having been acquiesced in by the appellant, who only complains of the final judgment rendered on the evidence which was adduced on the trial of the cause below, after issue joined by the defendants; and it is the correctness of the latter only which we are called upon to examine.

On the merits of the defence set up by the appellee, the case presents two distinct questions:

*First.* Is the notice of protest sufficiently proved to have been given to the endorser, by the Notary's stating in his certificate that the same was *delivered to said endorser himself*, when it appears that if it were so delivered by the Notary, the latter must have done so out of his parish? or, in other words, can a Notary give an official attestation of a fact occurring out of the place of his jurisdiction, when it is his own act which he certifies? *Second.* Was the delay granted by the court, *a qua*, to the defendants, in sustaining their exception, consented to by the plaintiff, without the consent and knowledge of the appellee?

I. The Notary states in his certificate, that "the parties to the note were duly notified of the protest, by letters to them *by me* written and addressed, served on them respectively in the manner following, viz: by delivering the one for F. Roy to himself," &c.; and from an admission found in the record, it is established, that on the 1st of April, 1843, (the day on which the notice was served on the endorser,) the defendant, F. Roy, was confined to his house in the parish of St. Bernard by sickness. Hence, it is necessari-

ly inferred that the Notary, having served the notice himself, must have crossed over the parish line in order to make a personal service on the defendant; and it is contended that the official certificate of the fact showing the personal service of the notice, supersedes the necessity of his appearance in court as a witness, and that such certificate is a sufficient proof of itself.

Under the statute of the 13th of March, 1827, (Bullard & Curry's Digest, p. 43,) Notaries, or persons acting as such, are authorized, by a certificate added to their protest, to state the manner in which any notices of protest to drawers, endorsers, &c., were served or forwarded; and wherever they shall have done so, a certified copy of such certificate shall be evidence of all the matters therein stated. We understand by this law, that whenever a Notary, in his official capacity, and, therefore, within the extent of his jurisdiction as such, has done any act going to show the manner in which notices of protest were served, or forwarded, the statement thereof contained in his certificate shall have the same effect, as proof, as though the fact were proved by his testimony given under oath. For instance, if the notice is deposited in the post office by the Notary and forwarded by mail, or served personally by him upon an endorser, or in any other manner, within the limits of his jurisdiction, his statement of such facts, from the credit which the law attaches to the acts of such officers performed under their official oath, shall be believed, and no other proof shall be required. But we are not prepared to say, if the act performed is done by him in a parish in which he has no capacity to act, that the same degree of faith and credit should be given to his written and unsworn attestation. In the latter case, he should be sworn and examined as an ordinary witness. Here, when the Notary served the notice on the endorser personally in the parish of St. Bernard, his capacity was suspended. He made such service as any other individual would have done. He was not acting under his oath of office. He was out of his legal jurisdiction; and it seems to us, that if we were to permit him to attest this fact officially after his return to his office, and to give effect, as evidence, to his official statement of an act by him performed in a parish in which he was incompetent, it would be recognizing, and even vesting Notaries, with such powers as our Legislature never

Gordon v. Dreux and another.

can have contemplated. We are of opinion that the evidence of notice, furnished in this case, by the production of the Notary's official certificate, is insufficient; and that on this ground, the plaintiff should have been nonsuited.

II. An affirmative answer to this question, would go to the absolute discharge of the endorser; and this is the ground upon which judgment was rendered below, against the plaintiff, in favor of the appellee. The latter contends that time was granted to the drawer of the note, without his consent and knowledge; and the judgment of the inferior court sustaining the exception, is referred to as evidence of the fact. It is true that sixty days were allowed to the defendants before filing their answer to the merits, in consequence of the agreement alleged in their exception, that is to say, because the facts therein stated were satisfactorily proven; but the exception was set up by both defendants, who joined in the same plea, and it is no where stated in the exception that such time was given by the plaintiff without the consent or knowledge of the appellee. They both say that the suit was prematurely instituted; they both claim the benefit of the time alleged to have been agreed upon between the plaintiff and the drawer; and both aver that until the expiration of the delay allowed, the plaintiff cannot proceed to enforce the payment of the note sued on, which, they both say, is not yet due or *payable*. This exception, which was sustained, clearly shows that the appellee not only knew that the delay claimed had been allowed by the plaintiff, but that he had also consented to its being granted. He knew it so well, that he made use of the same plea, and obtained the postponement of the suit for sixty days. Far from making opposition to the delay, he enjoyed the benefit of the plaintiff's indulgence, without suggesting in any manner that it had been allowed without his knowledge and against his consent; and we must come to the conclusion, that the appellee is not entitled to his discharge.

It is, therefore, ordered, that the judgment appealed from, which is hereby affirmed, be so modified as to be in favor of the appellee as in case of nonsuit, with costs in the lower court, those in this court to be borne by the appellee.